IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

No. 4:06-CV-219-D(3)

| | |
|---|---|
| ADRIAN L. BENNET,<br>    Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br>    Defendant. | **MEMORANDUM &<br>RECOMMENDATION** |

This matter is before the Court upon the parties' joint Motions for Judgment on the Pleadings **[DE's 8-9 & 12-13]**. The time for the parties to file any responses or replies has expired. Accordingly, the matter is now ripe for adjudication. Pursuant to 28 U.S.C. 636(b)(1), this matter is before the undersigned for a Memorandum and Recommendation. The underlying action seeks judicial review of the final decision by Defendant denying Plaintiff's claim for Disability Insurance Benefits ("DIB"). For the following reasons, it is HEREBY RECOMMENDED that Plaintiff's Motion for Judgment on the Pleadings **[DE-8]** be DENIED, Defendant's Motion for Judgment on the Pleadings **[DE-12]** be GRANTED, and the final decision by Defendant be AFFIRMED.

## Statement of the Case

Plaintiff applied for DIB on November 18, 2004, alleging that he became unable to work on January 14, 2004 (Tr. 14). This application was denied at the initial and

1

reconsideration levels of review. *Id.* A hearing was later held before an Administrative Law Judge ("ALJ"), who found Plaintiff was not disabled during the relevant time period in a decision dated June 17, 2006. *Id.* at 14-21. The Social Security Administration's Office of Hearings and Appeals denied Plaintiff's request for review, rendering the ALJ's determination as Defendant's final decision. *Id.* at 10-11. Plaintiff filed the instant action on October 10, 2006 **[DE-1]**.

## **Standard of Review**

This Court is authorized to review Defendant's denial of benefits under 42 U.S.C. § 405(g), which provides in pertinent part:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive...
> Id.

"Under the Social Security Act, [the Court] must uphold the factual findings of the Secretary if they are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). "Substantial evidence is ... such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir.1966). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility

2

determinations, or substitute [its] judgment for that of the Secretary." Craig, 76 F.3d at 589. Thus, this Court's review is limited to determining whether Defendant's finding that Plaintiff was not disabled is "supported by substantial evidence and whether the correct law was applied." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir.1990).

## Analysis

The Social Security Administration has promulgated the following regulations which establish a sequential evaluation process which must be followed to determine whether a claimant is entitled to disability benefits:

> The five step analysis begins with the question of whether the claimant engaged in substantial gainful employment. 20 C.F.R. § 404.1520(b). If not, the analysis continues to determine whether, based upon the medical evidence, the claimant has a severe impairment. 20 C.F.R. § 404.1520(c). If the claimed impairment is sufficiently severe, the third step considers whether the claimant has an impairment that equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations. 20 C.F.R. § 404.1520(d); 20 C.F.R. Part 404, subpart P, App.I. If so the claimant is disabled. If not, the next inquiry considers if the impairment prevents the claimant from returning to past work. 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545(a). If the answer is in the affirmative, the final consideration looks to whether the impairment precludes the claimant from performing other work. 20 C.F.R. § 404.1520(f).
> Mastro v. Apfel, 270 F.3d 171, 177 (4th Cir. 2001).

In the instant action, the ALJ employed the five-step evaluation. First, the ALJ found that Plaintiff is no longer engaged in substantial gainful employment (Tr. 16). At step two, the ALJ found that Plaintiff suffered from one severe impairment: degenerative disc disease of the lumbosacral spine. *Id.* In completing step three, however, the ALJ determined that this impairment was not severe enough to meet or medically equal one of the impairments

listed in Appendix 1, Subpart P, Regulation No. 4. *Id*.

The ALJ then proceeded with step four of his analysis and determined that Plaintiff retained the residual functional capacity ("RFC") to perform a narrow range of light work. *Id*. at 17. Based on this finding, the ALJ found that Plaintiff could not perform any of his past relevant work. *Id*. at 20. Finally, at step five the ALJ concluded that Plaintiff was not precluded from performing other work and that there were a significant number of jobs in the national economy that Plaintiff could perform. *Id.* at 20-21. Accordingly, the ALJ determined that Plaintiff was not under a disability at any time through the date of his decision. *Id.* at 21. In making these determinations the ALJ cited substantial evidence, a summary of which now follows.

Plaintiff sustained a back injury after trying to stop a shoplifter on January 14, 2004. *Id.* at 17, 205. He developed back pain which radiated down his left leg. *Id.* at 98-110, 121. Initially, he was treated by Doctor's Urgent Care Centre ("Urgent Care") for this injury. *Id.* A January 22, 2004 x-ray of Plaintiff's lumbosacral spine revealed normal alignment and bone density. *Id.* at 97. No evidence of arthritis or other abnormalities were seen in the x-ray. *Id.* During the time he was treated by Urgent Care, Plaintiff was prescribed treatment with lortab. *Id.* at 98-110. From January 20, 2004 to February 19, 2004, Plaintiff's treating physicians at Urgent Care did not indicate that he should not work . *Id.* Rather, they restricted him to a limited range of sedentary work. *Id.* Urgent Care then referred Plaintiff to Dr. Gregory Bauer. *Id.* at 121.

During his intake examination with Dr. Bauer, Plaintiff was found to have: 1)

4

tenderness of the spinal musculature and left para spinal region; and 2) weakness of the left calf, gastrocnemius, and the extensor hallucis longus muscles ("EHL"). *Id.* A MRI taken in February, 2004 revealed central disc herniation at L5-S1. *Id.* Dr. Bauer treated Plaintiff conservatively with medication, epidural steroid injections, nerve blocks and physical therapy. *Id.* at 117-123. On June 9, 2004, Dr. Bauer noted that Plaintiff was not tender in his lumbar spine and had very good strength in his EHL and anterior tibialis. *Id.* at 117. Plaintiff could come within six inches of touching his toes. *Id.* An thoracic MRI taken at that time was normal and Plaintiff did not have thoracic disc herniation. *Id.* Dr. Bauer did not believe Plaintiff had mononeuropathy or polyneuropathy. *Id.* Throughout his treatment of Plaintiff, Dr. Bauer did not opine that Plaintiff could not work. *Id.* at 117-123. Rather, Dr. Bauer limited Plaintiff to "sit down work." *Id.* On April 29, 2004, Dr. Bauer encouraged Plaintiff to "try to return to work in a limited capacity and try to improve his endurance." *Id.* at 119. Nonetheless, Plaintiff continued to complain of leg pain. *Id.* at 117. Therefore, Plaintiff was referred to Dr. Barry Katz for a second opinion. *Id.*

Dr. Katz determined that surgery was a reasonable option. *Id.* at 144. Therefore, on August 2, 2004, he performed a hemilaminotomy, foraminotomy, and discectomy at the L5-S1 level. *Id.* at 125-126. A follow-up MRI on September 16, 2004 revealed no significant stenosis. *Id.* at 140. Further surgery was not recommended. *Id.* Although Plaintiff continued to complain of pain, he initially did not follow Dr. Katz's recommendation to see a pain management specialist. *Id.* at 139-140. On January 31, 2005, Dr. Katz noted that Plaintiff looked fairly comfortable in his office. *Id.* at 138. Plaintiff had no weakness or

5

numbness on exam. *Id.* In Dr. Katz's opinion, Plaintiff had reached maximum medical improvement. *Id.*

An evaluation of Plaintiff's RFC was completed on February 9, 2005. *Id.* at 145-156. This evaluation was completed by a Certified Physical Work Performance Evaluator and a physical therapist. *Id.* The evaluators concluded that Plaintiff was capable of exerting: 1) up to 20 pounds of force occasionally; 2) up to 10 pounds of force frequently; and/or 3) a negligible amount of force constantly. *Id.* at 147. Based on these findings, the evaluators determined that Plaintiff was capable of sustaining a light level of work for an eight hour day. *Id.*

Plaintiff was also treated by Dr. Ron Long, a pain management specialist. *Id.* at 157-165, 177-192. He was treated by Dr. Long with flexeril, oxycodone, neurontin, cymbalta, duragesic patches, lunesta, lyrica as well as an epidural steroid injection. *Id.* Although Plaintiff continued to report back and leg pain, an EMG study on November 1, 2005 revealed no ongoing lumbosacral radiculopathy. *Id.* at 185. There was no evidence of ongoing axon loss. *Id.* Dr. Long opined that Plaintiff's complaints were consistent with a successfully decompressed right S1 nerve root with persistent radicular symptoms. *Id.* On December 1, 2005, Plaintiff noted that he had become much more functional and that his pain had decreased. *Id.* at 184. Plaintiff was last examined by Dr. Long's office on January 26, 2006. *Id.* at 182-183. At this time Plaintiff continued to complain of back and leg pain. *Id.* at 182. He reported an allergic reaction to an Oxycodone Sustained Release patch, although his complaint was deemed "slightly suspect.". *Id.* at 182. Upon examination, Plaintiff

6

demonstrated some pain on flexion but otherwise had a normal gait. *Id.* at 182. After this examination, Plaintiff was continued an a plan which included a decrease in his daily dose of percocet. *Id.* at 182-183.

An evaluation of Plaintiff's RFC was completed by DDS medical consultant Dr. William Robie on January 7, 2005. *Id.* at 130-137. Dr. Robie determined that Plaintiff was capable of: 1) occasionally lifting and/or carrying 20 pounds; 2) frequently lifting and/or carrying 10 pounds; 3) standing and/or walking (with normal breaks) about six hours in an eight hour workday; 4) sitting (with normal breaks) for a total of about six hours in an eight hour workday; and 5) pushing and/or pulling with no limitations other than as shown for lifting and/or carrying. *Id.* at 131. Plaintiff was deemed able to climb, balance, kneel, crouch and crawl frequently as well as stoop occasionally. *Id.* at 132. No manipulative, visual or communicative limitations were noted. *Id.* at 133-134. He was advised to avoid concentrated exposure to hazards such as machinery and heights. *Id.* at 134.

Plaintiff's RFC was again evaluated by DDS medical consultant Dr. Charles Burkhart on June 5, 2005. *Id.* at 166-173. Dr. Burkhart determined that Plaintiff was capable of: 1) occasionally lifting and/or carrying 20 pounds; 2) frequently lifting and/or carrying 10 pounds; 3) standing and/or walking (with normal breaks) for a total of about six hours in an eight hour workday; 4) sitting (with normal breaks) for a total of about six hours in an eight hour workday; and 5) pushing and/or pulling with no limitations other than as shown for lifting and/or carrying. *Id.* at 167. Plaintiff was deemed able to balance, kneel, crouch and crawl frequently as well as climb and stoop occasionally. *Id.* at 168. No manipulative,

7

visual, communicative or environmental limitations were noted. *Id.* at 169-170.

During the hearing in this matter, Plaintiff testified that he had constant pain in his back and legs, which was aggravated by standing for long periods. *Id.* at 211. He also noted that he was on several medications which made him feel drowsy and confused. *Id.* In addition, he stated that he could only stand for about 30 minutes and sit for 30 to 40 minutes. *Id.* at 216. He also asserted that he could not bend. *Id.* at 217. Plaintiff contended that he could walk one to two blocks and drive a car for short distances. *Id.* He testified that he could lift 10 to 15 pounds. *Id.* Furthermore, he stated that he is able to assist with some household chores, occasionally mow his lawn with a riding lawnmower, and shop for groceries. *Id.* at 221-222. However, he added that he often has to rest for long periods of time after completing such tasks. *Id.* at 222. Likewise, he stated that he has to lie down during the day for 1-3 hours. *Id.* at 218. Plaintiff attends church most Sundays. *Id.* at 222.

With regard to Plaintiff's testimony, the ALJ made the following findings:

> After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairment could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, duration and limiting effects of these symptoms are not entirely credible. The claimant has degenerative disc disease evidenced by radiological findings. However, his spinal stenosis at the L5-S1 level was corrected by surgery in August, 2004. Subsequent diagnostic testing has failed to document any ongoing signs of stenosis. Physical examinations have revealed that the claimant has no clinical evidence of ongoing nerve root compression which might be expected based on the degree of pain alleged. Additional surgery was not recommended. The claimant has reported a decrease in pain and an increase in his ability to function with his current treatment program which indicates that his symptoms are not as intractable as alleged. It is noted that Dr. Katz found that the

8

> claimant had reached maximum medical improvement in January, 2005 and a functional capacity evaluation in February, 2005 indicated that the claimant could perform light work. These records further indicate that the claimant's allegations of functional limitations are not supported by the record. In addtion, the medical evidence and observations by the [ALJ] do not reveal any evidence of a change in motor tone or bulk such as disuse atrophy, or other change in body habitus or constitutional appearance such as weight loss, which might be expected in a person whose activities are markedly restricted due to a debilitating disease process. These factors indicate that the claimant's allegations of functional restrictions are not fully credible.
> *Id.* at 19.

After weighing this evidence, the ALJ determined that Plaintiff retained the RFC to perform a narrow range of light work. *Id.* at 17, 20. Specifically, the ALJ found that:

> [t]he claimant can sit, stand and walk for up to 6 hours each in an 8-hour day. He requires a work environment which would permit him to change between sitting and standing positions at will. He can lift a maximum of 20 pounds and can lift and carry 10 pounds frequently. He is not able to perform any tasks requiring balancing or climbing. He can perform tasks requiring stooping, crouching, kneeling, and crawling occasionally. He is not able to perform tasks requiring exposure to hazards such an unprotected heights or dangerous machinery.
> *Id.* at 17

Finally, a vocational expert ("VE") testified at the administrative hearing. *Id.* at 227-230. Based on the ALJ's RFC determination, the VE opined that Plaintiff was not capable of performing his past relevant work. *Id.* at 228. However, the VE testified that a person of Plaintiff's RFC, age, education and work experience could perform the occupations of general clerk, shipping checker, mail clerk, and order caller. *Id.* at 228-229. Each of these jobs exist in significant numbers in the national economy. *Id.* Accordingly, the ALJ determined that Plaintiff had not been under a disability through the date of his decision. *Id.*

9

at 21.

Based on the forgoing record, the Court hereby finds that there was substantial evidence to support each of the ALJ's conclusions. Although Plaintiff lists several assignments of error, each assignment essentially contends that the ALJ improperly weighed the evidence before him. However, this Court must uphold Defendant's factual findings if they are supported by substantial evidence. Although Plaintiff may disagree with the determinations made by the ALJ after weighing the relevant factors, the role of this Court is not to undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Secretary. Craig, 76 F.3d at 589. Because that is what Plaintiff requests this Court to do, his entire claim is meritless.

## **Conclusion**

For the reasons discussed above, it is HEREBY RECOMMENDED that Plaintiff's Motion for Judgment on the Pleadings **[DE-8]** be DENIED, Defendant's Motion for Judgment on the Pleadings **[DE-12]** be GRANTED, and the final decision by Defendant be AFFIRMED.

SO RECOMMENDED in Chambers at Raleigh, North Carolina this 26th day of July, 2007.

_____
William A. Webb
U.S. Magistrate Judge

11